IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| PENNINGTON PARTNERS, LLC, | * | |
| Plaintiff, | * | |
| | * | Civil Action No.: RDB-11-0972 |
| v. | * | |
| J-WAY LEASING, LLC | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Pennington Partners, LLC ("Pennington") filed its Complaint on April 14, 2011 against Defendant J-Way Leasing, LLC ("J-Way") seeking outstanding wharfage fees and related damages in connection with certain vessels and marine equipment currently berthed at Pennington's facilities in Baltimore, Maryland. (ECF No. 1)  This Court issued a warrant and writ for the arrest and attachment of twenty vessels ("Vessels") (ECF No. 11), and on April 22, 2011, the United States Marshal arrested and attached the Vessels.  On June 1, 2011, Pennington moved for interlocutory sale of the Vessels (ECF No. 32), and on June 2, 2011, an interlocutory sale was ordered by this Court to occur on or before July 30, 2011 (ECF No. 33).  On June 20, 2011, Pennington moved for entry of default as a result of J-Way's failure to answer the Complaint.  (ECF No. 34)  The following day, the Clerk of the Court entered default against J-Way.  (ECF No. 35)  On October 18, 2011, Pennington moved for a modification of the interlocutory sale date (ECF No. 36), and on October 20, 2011, this Court ordered that the sale occur on or before December 2, 2011 (ECF No. 37).

On October 27, 2011, Pennington moved for entry of default judgment in the amount of

$82,834.21, which this Court granted on October 31, 2011.  (ECF No. 39)

On October 31, 2011, the United States Marshal conducted an interlocutory sale of

the Vessels, and the winning bid of $220,000[1] was accepted.  On November 3, 2011,

Pennington moved, pursuant to Federal Rule of Civil Procedure, Supplemental Rule E(9)

and Local Admiralty Rule (e)(12)(f), for confirmation of the sale of the Vessels.  (ECF No.

41).  On November 7, 2011, J-Way (now represented by counsel) moved to set aside the

entry of default judgment and opposed Pennington's motion to confirm the sale of the

Vessels.  In accordance with Local Admiralty Rule e(12)(f) , this Court heard testimony and

oral argument on January 12, 2012.  During the hearing, this Court granted in part and

denied in part J-Way's motion to set aside the entry of default judgment, and confirmed the

October 31, 2011 sale of the Vessels in question.  This Memorandum Opinion sets forth, in

greater detail, the reasoning for confirming the sale.

## STANDARD OF REVIEW

As recently summarized by this Court,

> Confirmation of a judicially-ordered sale is a "matter that falls within the
> judgment and discretion of the Court which ordered the sale." *Golden v. Oil
> Screw Frank T. Shearman*, 455 F.2d 133, 135 (4th Cir. 1972).  Although a sale in
> admiralty may be set aside before it is confirmed, "extreme caution should be
> used in such matters." *Morgan Guaranty Trust Co. v. M/V Hellenic Sun*, 581 F.
> Supp. 1266, 1267 (D. Md. 1984) (internal citations omitted); *see also Lambert's
> Point Towboat Co. v. United States*, 182 F. 388, 389-90 (4th Cir. 1910) (stating that
> "the rule is now well established that courts should proceed with great caution
> in disposing of motions to set aside sales duly made under the provisions of

---

[1]  The winning bid was actually $240,000, but upon inspection of the Vessels, Pennington and the
winning bidder discovered that the inventory had been overstated—specifically, five barges that
were part of the United States Marshal's sale were not in fact present at Pennington's facilities.
Accordingly, the winning bidder and Pennington agreed to complete the sale for $220,000.

their own decrees"). Policy dictates that "[j]udicial sales shall be certain, and all bidders should have equal opportunities." *Quinn v. S.S. Jian*, 235 F.Supp. 975, 977 (D.Md.1964).

*Canton Port Servs., LLC v. M/V Snow Bird*, 690 F. Supp. 2d, 405, 407 (D. Md. 2010).

Moreover, this Court has further noted the "well settled" rule that "[c]onfirmation of the sale will not be refused because of a mere inadequacy of price, however great, unless the inadequacy is so gross as to 'shock the conscience and raise the presumption of fraud, unfairness or mistake.'" *Morgan Guaranty Trust*, 581 F. Supp. At 1268 (quoting *American Trading & Production Corp. v. Connor*, 109 F.2d 871, 872 (4th Cir. 1940).

## ANALYSIS

J-Way, in its papers and at oral argument propounded three arguments in opposition to Pennington's motion for confirmation of the sale. First, it argues that J-Way received inadequate notice of the impending entry of default judgment and interlocutory sale under Local Admiralty Rule (c)(3)(a)(i). Second, J-Way contends that five of the individual vessels sold at the October 31, 2011 sale do not belong to J-Way, but instead to a separate and distinct company, South Shore Equipment Company ("South Shore"). In this regard, J-Way contends that South Shore received inadequate notice regarding the default judgment and interlocutory sale. Finally, J-Way argues that the $220,000 sale price is grossly inadequate to the actual value of the vessels, and amounts to fraud, unfairness, or mistake.

First, regarding J-Way's notice argument, it is clear that the Federal Supplemental Rules of Admiralty or Maritime Claims contain no notice requirement regarding interlocutory sales. *See* Fed. R. Civ. P. Adm. Supp. R. E(9). While this Court's Local Admiralty Rules do contain a notice provision, it concerns only notice regarding default

3

judgment.   See Local Admiralty Rule (c)(3)(a)(i).   However, regardless of the distinction between default judgment and interlocutory sale, it is abundantly clear that J-Way did in fact have notice of the default judgment entry and the interlocutory sale.   Mr. Al Johnson, the sole shareholder of J-Way testified that he was aware of the default judgment and the interlocutory sale.   Indeed, in his affidavit attached to J-Way's motion to set aside the default judgment, Mr. Johnson noted that he had "engaged in ongoing direct negotiations" with Pennington from as early as June 3, 2011—nearly five months before default judgment was entered and the interlocutory sale on October 31, 2011.   *See* Nov. 7, 2011 Johnson Aff. ¶ 3, ECF No. 47-2.   In short, it was only J-Way's, or more accurately Mr. Johnson's, dilatory tactics that contributed to this result.   Mr. Johnson could have retained counsel long before default judgment was entered against his company and before the vessels were sold. Accordingly, this Court concludes that J-Way had more than adequate notice regarding the default judgment and, although it is not necessary under the Supplemental Admiralty Rules, the interlocutory sale.

Second, with regard to the contention that the owner (South Shore) of five of the approximately twenty individual vessels at issue received inadequate notice of the default judgment and interlocutory sale under Local Admiralty Rule (c)(3)(a)(i), this Court concludes that the company had adequate notice.   Mr. Johnson testified that he is a twenty percent stockholder in South Shore, and acknowledged that he is the resident agent for the company. Accordingly, because this Court concludes that Mr. Johnson had adequate notice concerning the default judgment and interlocutory sale in his capacity as sole shareholder in J-Way, it has

no difficulty in concluding that South Shore was afforded adequate notice through Mr. Johnson.

Finally, J-Way argues that the $220,000 sale price for the Vessels is grossly inadequate in comparison to their true value—which J-Way contends is in excess of $700,000.   In support of this argument, J-Way has put forth evidence, through the affidavit and testimony of Mr. Johnson, that J-Way received a bid of $250,000 for two of the approximately twenty Vessels at issue.  *See* Dec. 15, 2011 Johnson Aff. ¶ 5, ECF No. 47-2.  The fact that J-Way received a bid for two of the twenty Vessels is of little moment.

It is true that inadequacy of sale price may be found where there an upset bid is substantially larger than the original sale price, *see, e.g.*, *Am. Tramp Shipping & Development Corp. v. Coal Export Corp.*, 276 F.2d 570 (4th Cir. 1960), but the October 31, 2011 sale was for a group of twenty ships in varying degrees of decay.  Mr. Timothy Mullane, a representative of American Maritime Group, LLC, the winning bidder in the October 31, 2011 sale, testified and was certified as an expert in the valuation of operational and scrap maritime vessels.  He testified that the lot of twenty vessels were "in bad shape," and that the vast majority of the vessels likely had value only as scrap material.  More importantly, he testified that, in crafting the winning bid for the lot of twenty Vessels, he had to factor in repair and transport costs that he estimated at approximately $40,000 to $50,000.  Accordingly, the fact that a third party bidder may have been willing to pay more for two of the (probably most commercially valuable and least costly to move) individual vessels carries little weight.  It is undoubtedly true that a careful and time consuming nationwide search for individual buyers for each of the twenty vessels would yield a sum total far in excess of the $220,000 winning

bid in this case—but the sale was for twenty Vessels that are currently rusting, sinking, and occupying wharf space at Pennington's facilities.  In sum, the disparity in bids in not so great as to "shock the conscience and raise the presumption of fraud, unfairness or mistake." *Morgan Guaranty Trust*, 581 F. Supp. At 1268 (quoting *American Trading & Production Corp. v. Connor*, 109 F.2d 871, 872 (4th Cir. 1940).

## CONCLUSION

For the reasons stated on the record at the January 12, 2012 hearing, and for the reasons stated above, Pennington's Motion to Confirm the October 31, 2011 United States Marshal's Admiralty Sale of Certain Vessels and Related Equipment (ECF No. 41) is GRANTED.

An Order granting Pennington's motion was entered at the conclusion of the January 12, 2012 hearing.  In addition, the Clerk of the Court is directed to transmit copies of this Memorandum Opinion to counsel.

Dated:        January 13, 2012

/s/_____
Richard D. Bennett
United States District Judge